J-S14017-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.Z., A MINOR | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| | : |
| APPEAL OF: D.M. AND D.M. | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 1582 MDA 2025 |

Appeal from the Decree Entered October 15, 2025
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s):  CP-36-DP-0000005-2023

| | |
|---|---|
| IN THE INTEREST OF: Z.Z., A MINOR | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| | : |
| APPEAL OF: D.M. AND D.M. | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 1583 MDA 2025 |

Appeal from the Order Entered October 15, 2025
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s):  CP-36-DP-0000006-2023

| | |
|---|---|
| IN THE INTEREST OF: W.Z., A MINOR | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| | : |
| APPEAL OF: D.M. AND D.M. | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 1584 MDA 2025 |

Appeal from the Order Entered October 15, 2025
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s):  CP-36-DP-0000101-2023

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED: JUNE 16, 2026**

In this dependency matter, former foster parents, D.M. and D.M. ("Appellants"), appeal *pro se* from the order that removed K.Z., Z.Z., and W.Z., (collectively, "Children") from their care. We quash because Appellants lack standing to appeal.

K.Z. and Z.Z. are twins and were born in April 2022. The court adjudicated them dependent in January 2023. It awarded legal custody to the Lancaster County Children and Youth and Social Service Agency (the "Agency"). The court placed K.Z. and Z.Z. with Appellants, and they resided with Appellants for 33 months until they were removed from Appellants' care. Their sibling, W.Z., was born in September 2023 and was adjudicated dependent shortly after his birth. The court awarded legal custody to the Agency and placed W.Z. with his siblings at Appellants' home, where he resided for 25 months until he was removed.

In October 2025, the Agency submitted an "Emergency Motion for Modification of Child[ren's] Placement."[1] The Agency stated in the motion that it had "has several concerns for [Appellants'] home including [Appellants'] lack of follow through in medical care for the children and [Appellants'] inability to manage all three (3) children out of [sic] the house at once[.]" Emergency Motion for Modification of Child[ren's] Placement, filed 10/27/25, at ¶ 2. The Agency asked the court to remove Children from Appellants' care and place

---

[1] The motion was dated October 15, 2025, but it was not filed until October 27, 2025.

them in a different foster home. The court issued an order granting the Agency's motion. *See* Order, 10/15/25. Children were removed from Appellants' care the next day.

On October 24, 2025, Appellants filed a "Motion to Intervene for Purposes of Right to be Heard by the Court and Motion for Reconsideration of Modification Order Changing Children's Placement" ("Motion to Intervene"). Appellants alleged that the Agency did not have any exigent circumstances to request the removal of Children immediately from their care. *See* Motion to Intervene, filed 10/24/25, at 3 (unpaginated). Appellants sought to intervene "solely on the issue related to the removal of [Children] from [Appellants'] foster home, to allow them the right to be heard at the Permanency Review Hearing on October 27, 2025 . . . to demonstrate to the [c]ourt that [Appellants] should be permitted to remain as the foster and pre-adoptive resource for" Children. *Id.* at 4 (unpaginated).

At a permanency review hearing on October 27, 2025, the court acknowledged that Appellants' Motion to Intervene was pending before it. N.T., 10/27/25, at 3. Appellants' attorney argued that Appellants had the right to notice and be heard before Children were removed, "[n]ot for standing" but "just for general rights of the foster parents." *Id.* at 4. The court agreed and stated it was "going to give [Appellants] a chance to . . . intervene in the matter and be heard." *Id.* at 12. The court continued the permanency review hearing so Appellants could have notice and opportunity to be heard on the removal issue. *Id.* at 15-16.

The rescheduled permanency review hearing was held on November 7, 2025. The court explained that it granted Appellants' Motion to Intervene for the limited purpose of allowing Appellants the opportunity to be heard at the November 7, 2025 hearing. N.T., 11/7/25, at 52-53, 124-25. The court heard testimony from both Appellants. *Id.* at 54-104, 105-116. It also heard testimony from the Agency's caseworker, CASA, and Children's biological father. At the conclusion of the hearing, the court found that the Agency's decision to move Children to a new placement was in Children's best interest. *Id.* at 122. While the court expressed regret that Children were removed from Appellants' care before they had an opportunity to be heard, it "tried to rectify that by conducting this hearing today and giving them an opportunity to be heard[.]" *Id.* at 120. The court then concluded, "I can say unequivocally that, based on all the information I've received, the evidence that I heard, and the testimony, that it wouldn't have changed my decision" to remove Children from Appellants' care. *Id.* This appeal followed.

Appellants raise the following issues:

1. Whether the emergency removal order was entered without satisfaction of the statutory requirements of the Juvenile Act and without competent support in the record?

2. Whether the trial court's authorization of [the] removal of Children from Appellants' long-term foster placement without notice, hearing, or opportunity to be heard violated procedural due process where Pennsylvania law created a protected liberty interest, and where the standing doctrine cannot be applied to insulate constitutional violations from judicial review?

- 4 -

3. Did the lower court err when it failed to address the well-document[ed], long[-]term bond between the Children and [Appellants] and the impact severing that relations would have on the Children?

Appellants' Br. at 4.

We do not reach the merits of Appellants' issues because we conclude that they lack standing to appeal. **See** Appellee's Br. at 8-9. Under Rule of Appellate Procedure 501, except where the right of appeal has been enlarged by statute, only a "party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom." Pa.R.A.P. 501. For purposes of Rule 501, a "party" includes an intervenor. One "who successfully intervenes in an action has all the rights of a party, including the right to appeal an appealable order if aggrieved." G. Ronald Darlington, *et al.*, West's Pa. Practice, Appellate Practice § 501:7 (December 2025 Update) (footnotes omitted).

Section 6336.1 of the Juvenile Act provides foster parents with the right to notice of any hearing and a right to be heard at such hearings. **See** 42 Pa.C.S.A. § 6336.1(a). However, "[g]enerally, foster parents do not have standing to participate in dependency proceedings." **In the Interest of M.R.F., III**, 182 A.3d 1050, 1055 (Pa.Super. 2018). Indeed, Section 6336.1 provides that foster parents' statutory rights to notice and an opportunity to be heard does not give them standing in the trial court:

> Unless a foster parent, preadoptive parent, relative providing care or a kinship care resource for a child has been awarded legal custody pursuant to section 6357 (relating to

rights and duties of legal custodian), nothing in this section shall give the foster parent, preadoptive parent, relative providing care or a potential kinship care resource for the child legal standing in the matter being heard by the court.

42 Pa.C.S.A. § 6336.1(a).

The Pennsylvania Supreme Court recently reiterated the principle that foster parents are not entitled to standing in dependency matters if they do not have legal custody. **Interest of S.W.**, 334 A.3d 334 (Pa. 2025). There, the Court explained:

> Through the Juvenile Act, the Legislature sought: "(1) [t]o preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained[; and (2) t]o provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b). The first explicit policy — preservation of the existing family unit whenever possible — cautions against extending standing to preadoptive foster parents, who are by their very nature hostile to the unity of the existing family unit.
>
> The second explicit policy — providing for the best interests of the child — while less straightforward, does not support standing for preadoptive parents. Arguably, granting standing to preadoptive parents could serve the best interest of the child, as preadoptive parents often have the most contact with the child and thus have important insights and observations. Yet, granting standing to preadoptive parents is not an unqualified boon to the best interest of the child. Instead, granting standing to preadoptive parents injects a new set of considerations to balance against the interests of the existing family unit. This Court has recognized that in seeking the best interests of the child, "courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development **quickly**." **In re T.S.M.**, 620 Pa. 602, 71 A.3d 251, 269 (2013) (emphasis added). "Quickly" is generally

- 6 -

defined as "in less than two years, absent compelling reasons." ***Id.*** By granting standing to an additional party, the preadoptive foster parent exception countenances the possibility of additional motions, hearings, and appeals, which all but guarantee the process will drag on beyond two years.

Section 6336.1 provides preadoptive parents with the right to notice of any hearing and a right to be heard at such hearings. Thus, the legislature ensured that the important information held by preadoptive parents would be presented the judge, but did so in a way that did not grant preadoptive parents standing. Preadoptive parent standing is contrary to the explicit structure and goals of the Juvenile Act.

***Interest of S.W.***, 334 A.3d at 345-46.

Here, Appellants never had legal custody of Children nor were they parties to the underlying dependency action. Appellants, in fact, concede this. ***See*** Appellants' Br. at 16-17. Further, Appellants never sought party status. Rather, they only sought intervention for the limited purpose of being heard at the permanency review hearing. Although the lower court stated that it granted them limited intervenor status to give them an opportunity to be heard, its doing so was superfluous. They already had a statutory right to be heard, pursuant to 42 Pa.C.S.A. § 6336.1(a), so intervention was not necessary or proper for that purpose. Furthermore, they could not be made intervenors because, under Section 6336.1(a) and ***Interest of S.W.***, they lacked standing in the lower court. Moreover, Appellants do not challenge on appeal the purported grant of limited intervenor status.

Although Appellants did not have an opportunity to be heard before Children's removal, the court cured any error when it continued the October

27, 2025 hearing and allowed Appellants to be heard at the November 7, 2025 hearing. After hearing all of the evidence, including testimony from Appellants,[2] the court determined that a change in placement was in Children's best interest. Appellants were thus properly afforded with notice and an opportunity to be heard at the hearing.

Therefore, we conclude Appellants lack standing to appeal from the removal order. At no time did Appellants obtain party status in this matter. Accordingly, we quash this appeal.

Appeal quashed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/16/2026

---

[2] The court found Appellants not credible. **See** Trial Court Opinion, 12/12/25, at 12.